1          THE COURT:  Wardrip versus Thaler.

2          Ms. Hayes.

3          MS. HAYES:  May it please the Court.  The

4   Texas Court of Criminal Appeals was well within the

5   bounds of AEDPA reasonableness in ruling that the --

6   that Wardrip had failed to establish the merits of his

7   ineffective assistance claim.  In state court the

8   allegation was that counsel failed to put on any

9   evidence of his positive prison record, but there was no

10  evidence actually offered to the state court to support

11  the claim.  Instead, there were only unsupported

12  allegations in the state writ, for example, claiming

13  that Wardrip had trained on the fire department.  That

14  he was a reporter for the unit newspaper.  That he went

15  to a college class and was a trustee and maybe didn't

16  even live within the prison walls when he was last in

17  prison serving a 35-year sentence for the murder of his

18  fifth victim.  There was also an allegation that he ran

19  a fundraiser for a child that needed a kidney and liver

20  transplant.  And maybe an unidentified warden told his

21  father that he was one of the best prisoners there.  But

22  in state court, like I said, there was no evidence to

23  back any of these allegations up.

24          There was no affidavit from any uncalled

25  witness.  There was no TDCJ guard or warden or anyone

with knowledge about TDCJ that was presented during
state habeas. There was also no affidavit from Wardrip
attesting to his, at least informing counsel these are
the -- look what I did in prison, I helped with a
fundraiser. I was a trustee. Some of the allegations
are not obviously something that would readily jump out
from TDCJ records. For example, the prison fundraiser
allegation isn't something that may even appear in the
records. In fact, to date, there's still been no
evidence offered, other than in federal court. The
inmate trust account records establishing that perhaps
his only participation was contributing, maybe, $1.90 to
a fundraiser.

Although that was granted, that was in
federal court. But that's the only evidence to date
that's come up to even show what kind of participation
he may have had. So when Wardrip faulted counsel for
not investigating and presenting mitigating evidence, I
mean, he failed to provide that evidence to the state
court to even consider. And without the affidavits or
the record evidence, Wardrip claim would fail to
demonstrate there were any real deficiencies with the
trial counsels investigation.

THE COURT: The affidavit from John Curry
that was introduced in state habeas was that provided by

1   the State.  Where did that come from?

2                   MS. HAYES:  It was relied on by the State

3   in its answer.  I believe Mr. Curry submitted the

4   affidavit separately.  In the state court records, it's

5   pages 46 to 56 and the State's answer follows so --

6                   THE COURT:  But it wasn't evidence

7   submitted by Wardrip himself.

8                   MS. HAYES:  No, no, Your Honor.

9                   THE COURT:  Okay.

10                  MS. HAYES:  In assessing the merits of

11  the ineffective assistance claim, a court doesn't need

12  to address both parts of the Strickland showing.  But

13  they can certainly dispose of a claim based solely on

14  failure of a petitioner to meet either prong.  In this

15  case, with all the evidence that's been developed

16  through federal court, it would certainly be the most

17  direct approach for this court to just jump straight to

18  the prejudice prong because that would certainly be the

19  easiest to establish and would certainly show that the

20  Texas courts -- a determination was objectively

21  reasonable.  Here the Texas court specifically found

22  that given the commission of Wardrip's five murders,

23  three aggravated kidnappings, two aggravated sexual

24  assaults and a burglary of a habitation, he failed to

25  establish any reasonable probability that -- that he

would not have received the death penalty had counsel

presented any of the unsupported allegations in state

court. Now that --

THE COURT: I'm not trying to rush you,

but you talk about if we consider the federal record,

are you going to address Pinholster and what we should

be doing with that record?

MS. HAYES: Absolutely. In looking at --

in assessing what was in front of the state courts and

adjudicate the ineffective assistance claim on the

merits, Pinholster instructs that the courts review is

limited to the actual record that was before the state

court. In this case, that record consists of the

evidence that was presented at trial. So that's the

testimony presented by the defense of Wardrip's former

employer, Fred Duncan. It's also the testimony of the

parole officer, John Diller. Those are the two

witnesses presented by the defense. During the

punishment phase the State introduced the penitentiary

packet, which included the disciplinary records. And

defense counsel was able to argue that those two records

show that he only had two disciplinary offenses during

the 11 years or 11 plus years in prison. So he tried to

turn that into something that was mitigating.

And he also had argued that the fact that

1  Wardrip had confessed to these four murders showed that

2  he was taking responsibility for his crimes.  Now, that

3  was what was in front of the jury at trial, as far as

4  mitigating.  But as far as aggravating, the State was --

5  Wardrip's jury was faced with, of course, the horrific

6  facts underlying Terri Sims' murder.  And this isn't the

7  State's fallback position of the facts of the crime are

8  so horrific that that means you can't prove prejudice.

9  This shows in this crime, Wardrip tied the victim with

10  an electrical cord, raped her, beat her, stabbed her

11  repeatedly and then actually was even inflicting what

12  they called tease wounds.  Wounds that were trying to

13  get her attention, prolong the attack and what was going

14  on.

15           In the 17 months following the murder of

16  Terry Sims and that's the murder that he is convicted

17  for for capital murder, he also kidnapped, raped and

18  murdered Toni Gibbs.  A nurse on her way home from work

19  at the hospital who had offered to give him a ride home.

20  Shortly after that, he kidnapped and strangled a woman

21  to death, Debra Taylor, who lived in Fort Worth and left

22  her body out in a field.  She was a mother of two young

23  daughters.  Wardrip then kidnapped and murdered Ellen

24  Bilal, a woman that he abducted from a parking lot at a

25  convenient store.  Raped her, beat -- I'm sorry, the

1    body was so decomposed that she --

2                 THE COURT:  Counsel, we're familiar with

3    the facts and they as you said they are horrific what we

4    need -- what I need to know, what I think you need to

5    explain, as does opposing counsel, is, why don't we just

6    summarily reverse this and send it back to the district

7    court because the district court relied on testimony

8    taken at an evidentiary hearing by the attorney that the

9    judge and the magistrate judge seemed to be impressed

10   with?  But under the Supreme Court, dictated under

11   Pinholster, we are not -- district court was not allowed

12   to buy into that that the magistrate had in his report

13   recommendation and we are not at liberty at this point

14   to even review that.  There's no sense in reviewing it

15   at this point because we're -- our review would be

16   restricted to the trial court's consideration of the

17   state record and the trial -- the district judge and the

18   magistrate went outside of the record.  So why are we

19   here?

20                 MS. HAYES:  There's -- there are several

21   reasons not to remand the case, that the case should

22   stay here.  And the first is that there's no need for

23   any further factual finding.  The record is as complete

24   as the records probably ever going to get.  Especially

25   in light of the fact that trial counsel is now deceased.

He died in February of 2009.

THE COURT: But shouldn't the district court be allowed to first determine -- decide the case for the proper standard before?

MS. HAYES: Well, as I had in the letter briefing that I filed on May 31st, I pointed out the fact that the even if the case was sent back and with instructions from this court to conduct a properly limited review, the lower court created -- sort of created a legally incorrect prejudice analysis. That there's -- there doesn't look like even by sending it back and saying limit your review to what was in the state court record that it would necessarily also sua sponte, correct. It's erroneous legal reasoning. And that was instead of weighing the evidence, instead of even considering the quality and quantity of what was presented by Wardrip. The court relied on factors like the jury wasn't instructed about parole laws or the jury deliberated future dangerousness. I mean, of course they did, it was one of the special issues. Those are the factors the Court looked at in weighing the mitigating evidence, what was missing. And if this court has to send the case back and say, limit your review to what was in the state court record -- and by the way, here's how you're supposed to analyze

1    Strickland claims under the AEDPA.  It would certainly

2    be easier since this court already does De Novo Review,

3    to just keep the case and issue the opinion reversing

4    the district court.

5                    THE COURT:  We often think that's the

6    case.  We don't often do that for the institutional

7    reasons.  Well, looking at Pinholster itself, once it

8    decided that all this extra evidence should not have

9    been developed and shouldn't have been considered, it

10   said we conclude Court of Appeals Circuit Court erred in

11   considering the new evidence.  Ordinarily, we would

12   remand for a properly limited review.  Of course they

13   could've meant to the circuit court.  But I think -- but

14   because the circuit court had gone ahead and considered

15   in the alternative, just the state court record, the

16   Supreme Court itself did De Novo Review seems to me --

17   I'm not sure which way that cuts in our case, certainly

18   Supreme Court was saying, even though their review is de

19   novo as well normally they wouldn't do a De Novo Review.

20   It's the business of trial court's to be doing that.  Or

21   at least lower court's.

22                    They may have been saying the circuit

23   court should have been doing that.  But it does seem to

24   me the direction of Pinholster, the suggestion of

25   Pinholster, is that we ought to send this back even

though we could do a De Novo Review.  Usually we are
reviewing and we would review what the district court
said, give a De Novo Review, but we get the guidance of
the Supreme Court -- of the district court in looking at
a brand new category of evidence.  This limited category
that the district court did not consider before.  Isn't
there an institutional -- you don't need to talk about
institutional needs, but isn't -- aren't there
procedural benefits to doing that?

MS. HAYES:  Not in this case, Your Honor.
Not with -- not with a case that's already over 25 years
old.  The case stayed in the district court for almost
11 years before they finally issued an opinion.  They
considered all the evidence through the federal,
including the sort of hypothetical case that they
believe should have been presented.  When this court has
the ability to just parse down that record, what was
actually in front of the state court and can go ahead
and issue an opinion at a judicial economy, there is
certainly enough reason for this court to go ahead and
do that.  And routinely the court's -- I mean, granted a
new rule or new law out there, but the Court routinely
reverses district court's.

THE COURT:  Not routinely.

THE COURT:  Not routinely.

1           MS. HAYES:  Well, when error.

2           THE COURT:  But in this situation, there

3    is no alternative reason for ruling offered by the

4    district judge.  I mean, we don't have any findings that

5    we can hang our hat on and we don't make findings.

6           MS. HAYES:  Well, if you're referring to

7    the findings that were issued by the magistrate that

8    they were all adopted by the district court, I mean, so

9    those are the findings apparently in front of this court

10   how he's reviewed the record and assessed it.  And he

11   has set it out --

12          THE COURT:  He didn't make a finding

13   ignoring the new evidence.

14          MS. HAYES:  Right.

15          THE COURT:  He considered the new

16   evidence.

17          MS. HAYES:  Right.  And then that's all

18   he had.  I mean, because quite frankly, there is no

19   evidence in state court.  I mean, so in this kind of a

20   record when there's nothing, it's not even a matter of

21   let's reweigh what was in state court --

22          THE COURT:  So you think we should strike

23   that evidence and reverse and render?

24          MS. HAYES:  Absolutely.

25          THE COURT:  You have any authority for

1   that?

2           MS. HAYES:  Because -- Roe versus

3   Ortega-Flores.  When the Supreme Court says that the

4   Court needs to have a sufficient record before it when

5   it makes its ruling and this court has a sufficient

6   record and when reviewing it De Novo and limiting that

7   review to the fact, there is no evidence in state court.

8   There's certainly no way to prove that the state's court

9   adjudication was incorrect -- was objectively

10  unreasonable.

11          THE COURT:  Well, let me ask you your

12  concept of what the evidence is.  And no doubt, opposing

13  counsel tell us why we're considering the wrong approach

14  altogether.  But in support of the state habeas

15  petition, it seems to me Wardrip had two affidavits.  We

16  have from the State, the John Curry affidavit.  I guess

17  to some extent we have the trial -- state trial court

18  record, which is a more voluminous matter to be dealing

19  with.  What was presented so we'd have to deal with, you

20  know, how this issue was presented of mitigation.  But

21  sort of taken out the state trial court record.  Do we

22  just have these affidavits in the state habeas records?

23          MS. HAYES:  Yes, Your Honor.  The

24  affidavit of Larry Revel is in the state habeas record,

25  Page 34.  That was the coworker and said he went to the

1 same church and he kind of liked Wardrip.  Thought he

2 was -- had visions of raising his family in the

3 community.  The State can -- the Court can consider

4 that.  That's in the state court record.  But it doesn't

5 have anything to do with positive prison record claim.

6 And neither does the affidavit of Kenneth Bishop.

7 That's the state court record at Page 35 and he -- -

8               THE COURT:  Weren't there other issues he

9 was raising in the state habeas court besides

10 mitigation?  Seven claims -- seven claims of ineffective

11 assistance.  So some of this won't even relate to

12 mitigation you're saying?

13               MS. HAYES:  Well, it all had to do with

14 -- like the affidavits of the coworkers and the

15 acquaintance were offered to try to show Wardrip had

16 transformed since the period where he had killed five

17 women.  And so that was the -- a different allegation of

18 ineffective assistance.  And then he also had the other

19 state court claim about not presenting expert testimony

20 to assist on future dangerousness.  Those are the two

21 experts that testified the second day of the federal

22 hearing.  And during the federal hearing counsel more

23 thoroughly explained why he did not present those

24 witnesses at trial.

25               But I mean, on the -- on the record here,

the only evidence -- like I said, there is just no
evidence at all in state court.  And so there's no real
way I mean, once the court parses down what's properly
in front of the Court after Cullen, I mean, there's
nothing left.  Even if the Court somehow decided that
AEDPA difference or Pinholster didn't impact the case,
even the Court -- even the case developed in the federal
court is not likely to ever made any difference in
Wardrip's sentence.

I mean, the educational and vocational
records showing that he got a GED.  Come on.  It's
evidence at trial showed that he dropped out of high
school at 12th grade.  Two articles where he reports
prison newspaper scores -- scores from prison softball
games.  And then he's got inadmissible hearsay
affidavits from a defense investigator and from a
sister-in-law trying to verify that he, you know,
behaved and did well in prison.  To date, there just --
even with -- in federal court, even with the assistance
of a defense investigator, there's still been no
evidence presented, no admissible evidence to support
many of the allegations.  So after considering in light
of this record, which isn't much in state court, there's
certainly no reason to conclude that the state court had
ever unreasonably adjudicated the Strickland claim.  And

for that reason the Court should reverse and render.

THE COURT:  Thank you, Ms. Hayes.  You saved some time for rebuttal.

Ms. Penrose.

MS. PENROSE:  Good morning.

THE COURT:  Good morning.

MS. PENROSE:  May it please the Court, counsel.  My name is Mary Margaret Penrose and I'm here with cocounsel Bruce Anton, court appointed to represent Mr. Faryion Wardrip in this extraordinary case.  I'd like to start by responding to the Cullen issues that seem very important to this court and in deed they are.  I'd also like to look -- have the -- draw the Court's attention to the magistrate's opinion in this case.  Because the magistrate's opinion showed an absolute unyielding amount of allegiance to the AEDPA.  Throughout that opinion -- and the opinion is 64 pages.  It's very cautious, it's very thoughtful and in more than in one instance, the court looks and yields to the AEDPA.  Not only under Section D1, which is covered by Cullen, but also under Section D2, which the Court utilized to deny one of Mr. Wardrip's claims.

Cullen does not speak to Subsection D2 under the AEDPA.  Your Honor, it asked if there was any authority for a circuit court to go ahead and decide the

1  facts knew, rather than remanding back down as we had

2  suggested Cullen instructs this court to do.  Actually,

3  there are two cases I would like to draw the attention

4  to this court.  Where the Supreme Court in one case and

5  it's Wiggins -- in the Wiggins case where Justice

6  O'Connor writing for the majority spoke to the fact that

7  the AEDPA does in deed limit evidentiary hearings in the

8  consideration of materials under those evidentiary

9  hearings.  But she instructed that there are two

10  alternatives for a court to upset state court rulings.

11  One is under D1, where it's an unreasonable application

12  of the law to the case.  And two is when there's an

13  unreasonable determination of the facts in light of the

14  record.  And in Wiggins, United States Supreme Court --

15  and I'll try and get the exact page, Your Honor, for

16  you, is the Court said in that in Wiggins, the Court

17  based it's conclusion in part on a clear factual error.

18  That the social service records incidents of sexual

19  abuse were known to the attorney.  As the State and the

20  United States now can see, the records contain no

21  mention of sexual abuse, much less of the repeated

22  molestation and rapes of petitioner.  The state court's

23  assumption that the records documented incidences of

24  this abuse has been shown to be incorrect by clear and

25  convincing evidence under *28 USC 2254e1* and reflects an

1 unreasonable determination of the facts in light of the

2 evidence presented in the state court proceeding citing

3 *2254d2*.

4         THE COURT:  Well, counsel, doesn't that

5 just mean that if there were findings based on a

6 particular record by the lower court, Supreme Court and

7 this court has to determine whether those findings are

8 legitimate?  That's what Wiggins is talking about.  The

9 question from Judge Clement or at least my question was,

10 is there any case that says if the lower court looked at

11 the wrong record, an overly large record and we need to

12 decide what the law is based on a narrower record.

13         MS. PENROSE:  Correct.

14         THE COURT:  Is there any case law that

15 says we do that or we remand it?  We're asking opposing

16 counsel is any case that says we do that?

17         MS. PENROSE:  Unfortunately, Your Honor,

18 probably recognizes, I think we have found that no one

19 has had the opportunity yet to decide this issue that

20 Cullen has provided.  In the Guidry case that this court

21 decided in 2005, the court also spoke to the breath of

22 evidentiary hearings.  Because I want to make sure that

23 the Court recognizes that Magistrate Stickney was proper

24 and did not abuse his discretion in holding an

25 evidentiary hearing.  In Guidry, and that's at

1    ***397 Fed 3d 306***, on Page 159, the Court says the district

2    court's holding that the hearing was consistent with our

3    precedent.  In other words, is held by the majority

4    opinion, district court did not abuse it's discretion.

5    Where a district court elects an instance is not barred

6    by ***2254e2*** as Judge Stickney found in this case to hold

7    an evidentiary hearing.

8                  The hearing may assist a district court

9    and ascertain whether state court reached an

10   unreasonable determination under either ***2254d1***, the

11   unreasonable application of law or ***2254d2***, an

12   unreasonable determination of the facts.  When this --

13                  THE COURT:  So they can't be new facts.

14   They have to be facts --

15                  MS. PENROSE:  Cullen doesn't speak to d2,

16   Your Honor.  The entire opinion of Cullen only speaks to

17   the unreasonable application of the law.  It doesn't say

18   anything in Cullen about d2.  It doesn't touch that

19   particular version and this is my instinct as to why

20   that must be so.  D1 and D2 provide two different

21   options.  One is, you understood the facts and the facts

22   are accurate, but the law that you applied you

23   misapplied.  In not only an incorrect fashion, but an

24   unreasonable fashion.

25                  In contrast, D2 protects Cullen from

being an absurd case. If Cullen literally meant what it says, you could never transcend the state record, then the federal court's would have to turn a blind eye to perjured testimony. If we found out an affidavit was perjured, under Cullen, in its most literal reading, you couldn't say that that was an unreasonable application of the law. Even though you find out the entire testimonial base forming the state court's opinion is false. Now, I would not suggest that Mr. Curry's testimony in this case is false, but when you look through the evidentiary hearing conducted by the federal court by Judge Stickney, you will find an affidavit that was filled with absolute material false statements. None of the testimony was based on personal knowledge.

Mr. Curry admits that information was not based on personal knowledge. Mr. Curry admits that he did not contact a single witness. That all of the investigation to which the state court bases its findings on is based on an investigator for whom he could not credit whether that investigation took place. I would like to draw the court's attention to a parallel analogy and I know it's not completely on point, but it's the best I have. In Shaffer versus Heitner, many years ago in personal jurisdiction, we may recall from law school. United States Supreme Court with Justice

 1  Marshall writing the opinion said, from this moment

 2  forward in all cases, he used the unequivocal language

 3  in all cases, from this moment forward, we shall apply

 4  International Shoe in (inaudible) to personal

 5  jurisdiction cases.  Shortly thereafter, about a decade

 6  later, Justice Scalia and the Supreme Court changed

 7  their mind in Burnham and Justice Scalia said, yes,

 8  Justice Marshall used the word all, all instances, but

 9  he didn't mean that because sometimes if we use

10  unequivocal language it can use lead to absurd assaults.

11              This is an extraordinary case.  I cannot

12  imagine the court having witnessed any case where you

13  have an individual who was sentenced for crimes that

14  were committed many years before the trial.  Where the

15  individuals -- all the crimes were committed before this

16  trial.  Where during that interim period the person was

17  incarcerated and only during those first two to three

18  years during that incarceration were there any issues at

19  all.  And both were minor.  One was literally yelling at

20  someone, hey turn off the TV, no, you turn off the TV.

21  All right.  That was the first instance.

22              The second was a shove.  And actually,

23  Mr. Wardrip was the one that was shoved to the ground

24  and hit his head, but he also received a disciplinary

25  action in that case because under TDC -- TDC -- the

1  rules of the Texas prison, that is what occurs.  Then

2  from that point forward, this individual had not

3  absolutely a single mark upon his prison record and that

4  continues to this day.  Yes, the crimes are horrific,

5  but they were all in the past.  This individual was on

6  parole for roughly 18 months and he was paroled by the

7  State of Texas four years prior to the first date that

8  the sentencing judgment says he could be paroled.  That

9  is extraordinary.  And I -- and we asked in our briefing

10 and I would ask again today, this court take judicial

11 notice that parole is not easily given to people who are

12 convicted of murder in the State of Texas.  It's a very

13 rare occurrence.  Any reasonable attorney would've

14 considered that evidence, because for the first time in

15 any case I can imagine, you don't have to predict

16 whether someone will be a future danger.

17             You have an abundance of evidence.  You

18 have an entire 12-year period in prison, plus you have

19 another period of 18 months outside of prison and those

20 are the two aspects that Ken Bishop and Larry Revel

21 testified to at state court.  They were going directly

22 to the issue of mitigation.  Directly to the issue of

23 future dangerousness.  One of the reasons I think this

24 court should remand the case back and permit Judge

25 Stickney to reevaluate his findings, in light of Cullen,

perhaps now realizing that there -- Guidry provides

alternative options, D1 or D2.  And if Judge Stickney

looks back at this testimony -- and I appreciate that

Mr. Curry is now deceased, but his testimony has already

been given.  His testimony demonstrated the flaws.

Absolute injustice in the state court's findings.

THE COURT:  Ms. Penrose, let me ask you,

obviously Magistrate -- Judge Stickney did not have the

benefit of the new case laws, so and some of the cases

you've been citing, all of them really, necessarily

predate Pinholster.  But it seems to me the majority in

Pinholster dealt with the very problem you're talking

about, that the International Shoe example, do we really

mean all.  Pinholster's contention that we are writing

E2 out of the statute is incorrect.  And then Judge

Thomas goes into a few very narrow examples that you

could probably recite to me, but not necessary.  But he

is indicating that, the court is, indicating that unless

the claim falls outside of deed, meaning a claim that

was not adjudicated on the merits in state court, what

(inaudible) requires is that federal court's sitting in

habeas not be an alternative forum for developing the

evidence.  And Judge Briar takes a stab at what E2 might

deal with.  Sotamayor disagrees with the whole approach,

but it is clear as of now -- and we don't get to correct

1  the Supreme Court, who isn't wrong, of course, until

2  they say they are, we're kind of, as are you, stuck with

3  this.

4              MS. PENROSE:  I would respectfully

5  disagree, Your Honor.  I don't find that Cullen's

6  language identifies directly to D2.  Throughout the

7  opinion, I see it applying to D1, which is why I think

8  the Shaffer versus Heitner, which is a quasi in rem case

9  and then you get to Burnham, which is the traditional

10  basis of personal jurisdiction, it's a very apt example.

11              Factually, I think Cullen is

12  extraordinarily different.  In this case, Judge Stickney

13  held a hearing, very limited, even in his opinion on

14  Page 15, he says I'm holding a limited evidentiary

15  hearing.  The State complained, we complained, we all

16  wanted more witnesses and he shut it down.  He needed to

17  assess in the first instance whether that testimony

18  submitted by the State, the only pillar holding up the

19  state court's decision, Mr. Curry's affidavit, was

20  credible.  And in fact, it wasn't.  It turned out to be

21  incredible.  And the United States Supreme Court in

22  Cullen actually said that it is not overruling Schriro

23  versus Landrigan and that's 550 US, I don't have the

24  exact page, I apologize.  But it's a 2007 case.  Justice

25  Thomas in Cullen suggests that that's completely

consistent.  Well, Schriro says that in deciding whether
to grant an evidentiary hearing, a federal court must
consider whether such a hearing could enable an
applicant to prove to -- I'm sorry, to prove the
petitions factual allegations, which if true, would
entitle the applicant to federal habeas relief.

Mr. Curry, in his federal petition, and
his state petition, suggested that the state attorney
did not do an investigation.  And meaning no disrespect
to Mr. Curry, he did absolutely nothing.  It's an
embarrassment because this is a case where you had a
wealth of mitigating information.  Mr. Curry, in his
state court affidavit says the best hope, this is his
testimony, the best hope I have to secure a life prison
for this individual, Mr. Wardrip, was to rely on the one
type of evidence the State could not rebut, his
exceptional record in prison.  He gives, in reason, in
the state court affidavit for not looking up any
information about prison.  There is no strategic
reasons.  I will, before I line down my argument, try
and encourage the court that if you do take the case and
review it on a De Novo basis, Mr. Wardrip should still
succeed and the district court decision should not be
disturbed because those state court findings are
absolutely unreasonable.  The affidavit that Mr. Curry

1  submitted --

2         THE COURT:  How could they be

3  unreasonable if they were not based -- if they were

4  based on facts that weren't discovered until the federal

5  court evidentiary hearing?  How could the state court

6  decision be unreasonable and that's all we look at?

7  Whether it's --

8         MS. PENROSE:  Right.

9         THE COURT:  Whether it's right or wrong.

10         MS. PENROSE:  I think a decision based on

11  factual misrepresentations is inherently unreasonable.

12  I think it would be, with all due respect, an absurd

13  result for Cullen to say we're going to ignore false

14  information.  State's -- I'm sorry, the affidavit was

15  incomplete.  And in looking at it, it's false, but you

16  know what, Cullen ties our hands and even though the

17  state court has a federal independent duty to say what

18  the law is.  Marbury versus Madison commands the Article

19  3 Courts to do a independent evaluation under habeas

20  corpus.  It's something the constitution provides.

21         THE COURT:  But we evaluate the state

22  court record.

23         MS. PENROSE:  Right.  And looking at

24  the --

25         THE COURT:  It's not a whole other bite

1    of the apple.

2              MS. PENROSE:  Absolutely.  I'll agree and

3    that -- I'll try and weed my response to what I

4    understand is your question to complete the distinction

5    I draw out of Cullen.  Cullen truly was new evidence.

6    It was two new affidavits of two new medical experts.

7    Two people speaking to an issue.  The evidentiary

8    hearing in this case was simply an elimination of the

9    unreasonable nature and the factual inaccuracy of

10   Mr. Curry's testimony.  When you read that state court

11   affidavit it's not based on personal knowledge.  There's

12   no averment that that's true.  The 5th Court Circuit

13   demands that of affidavits.  The Texas court's demand

14   that of affidavits.  There's nothing in the face of that

15   affidavit that says it's based on personal information.

16   Throughout the affidavit talking about any of the

17   mitigation evidence in the investigation, Mr. Curry

18   consistently uses the term we.

19             Any reasonable person -- if my parents

20   asked a question, who broke that lamp?  Well, we broke

21   it mom.  My parents wouldn't be satisfied.  We, who do

22   you mean by we?  Personal knowledge, if you're saying,

23   we did something, you have to describe who the we is and

24   what part of the we is you.  I think a reasonable court

25   looking at Mr. Curry's affidavit would look at that

testimony and recognize that it's ambiguous at best.  I do believe that was the motivation for Judge Stickney when he held this evidentiary hearing because he limited is strictly to Mr. Curry's testimony.

Judge Stickney even took the liberty during the hearing to give Mr. Curry every single benefit of the doubt.  Mr. Curry, did you speak to this witness?  No, Your Honor.  If we failed, either the State or Mr. Anton or myself failed to properly ask a question, the judge went out of his way to give the benefit of doubt to Mr. Curry.  Was there any reason you could give the court, Mr. Curry, for not looking at information and materials that you yourself say was the best hope for securing a life sentence?  Mr. Curry's response, Your Honor, I didn't really make a decision one way or the other.  When you look at the face of the affidavit that was submitted to the state court, there is no strategic reason, none whatsoever, that was given for not investigating Mr. Wardrip's prison record.  Instead, what you have is a state court, which I'm sure this court is very familiar with how state findings are issued in Texas.  The prosecutor sends over -- they're basically a version of their brief.  Here's my brief, put them in the findings and many of the state court judges sign them.  So then the state court should be

1   stuck with those findings.  They wrote down that Mr.

2   Curry had a strategic reason for relying on the state's

3   evidence.  There was no reason.  He didn't say, you know

4   what, I think I'll just sit back and see what the State

5   has.  Because the State would not have enough

6   information that if there were errors in that

7   information, they would only be able to be pointed out

8   by Mr. Curry.

9                  The State's going to say he had these two

10  prison issues.  The other record evidence that exists,

11  the State of Texas clearly suppository of his prison

12  time, they know he was an extraordinary inmate.  They

13  know he was paroled four years early.  They know he was

14  an exceptional parolee and during the hearings in this

15  particular case, his parole officer said he was one of

16  the best parolees he had ever had.  There were two

17  friends of his in the community that wanted to testify

18  that he wasn't a threat to future danger and Mr. Curry

19  didn't call either of those individuals.  That was also

20  elucidated in the evidentiary hearing.  Turned out to be

21  factually false.  Many of the allegations that

22  petitioner set forth in his petition, both in state and

23  federal court, consistent with the Schriro case that

24  I've cited to the court from the United States Supreme

25  Court in 2007, were turned out to be factually

inaccurate.

Mr. Curry doesn't know whether his investigator Dana Rice contacted Betty Duncan or Brad Duncan, both of who, in the notes that the judge relied on, said they would've encouraged a life sentence for him. Dana Rice is medically incapacitated as our brief indicated and as Judge Stickney wrote in the findings, she also -- there are allegations and it is a fact, Mr. Curry, indicated this in his testimony that she was friends with one of the victims. She was the only investigator in this case and she was friends with one of the victims. It makes absolute sense why she didn't contact these witnesses. Brad Davis -- sorry, Brad Duncan has provided uncontroverted testimony that he was not contacted by Ms. Rice and not contacted by Mr. Curry.

So when Mr. Curry says we in that affidavit, he doesn't have personal knowledge. It's been contradicted and the State hasn't come forward with any other testimony. The same with Betty Duncan --

THE COURT: I'm sorry, you have certainly a fair amount of evidence and Judge Stickney, the district judge, also agreed with you that this new look led him to a different result. Let us assume that under Pinholster we are more limited than you are arguing on.

1    What we can do?

2                    MS. PENROSE:  Okay.

3                    THE COURT:  And you cannot as most of

4    what you're saying, basically represent the evidence

5    that would have been good to have been presented the

6    first time to whatever kind of neglect or otherwise was

7    not presented.  It seems to me if that's the rule, that

8    needs to be something different about this case and

9    about what you're arguing the principal evidence, being

10   the John Curry affidavit from ten years ago that the

11   state court had to rely on.  It seems to me that your

12   argument in part is that that was false evidence or

13   incomplete evidence.  If it's incomplete, it seems to me

14   we've got -- you've got a serious problem.

15                    If it is false in some way and that

16   falsity could not have been presented earlier you don't

17   get another chance.  I'm building my foundation for the

18   question, I guess, you don't get another chance.  It

19   seems to me to make a better case in federal habeas.

20   But maybe you have a chance to show that there was

21   something false about the evidence on which the state

22   court relied, which might be an E2 situation.  I'm not

23   sure that's apart of your argument.  You're really

24   arguing that this is D2 and Pinholster is D1, I'm not

25   really necessarily accepting that.  Is there something

1  unique about the falsity?  And is any case law in

2  (inaudible) that would help us decide that potentially

3  false affidavits, if that's what Curry's affidavit was,

4  might be treated differently.

5             MS. PENROSE:  Your Honor, absolutely.

6  Our position is this is false evidence.  Let me be very

7  clear about that.  We believe that Mr. Curry has

8  multiple false evidentiary statements in his affidavit

9  that now the federal government has actual knowledge of.

10  I don't have a case for that, Your Honor and I'm not

11  aware that one exists.  Cullen is absolutely new

12  authority and it has certainly changed the dynamics of

13  this case as this court require an additional briefing.

14  It's a very new case.

15             Justice Briar did demonstrate though a

16  potential exception in E2 as you indicated in the

17  concurring opinion and I think it's because the Supreme

18  Court would not permit an absurd assault.  I could not

19  imagine the United States Supreme Court saying

20  appreciate what you're saying, we are not trying to put

21  this case in a stronger evidentiary posture.  We're not

22  trying to put this case in a more formidable approach.

23  The state attorney in this case sought an evidentiary

24  hearing in state court.  It was opposed by the state, it

25  was denied by the court.

1          This attorney, the state habeas attorney

2    sought funding to get investigator to be able to locate

3    some of the evidence that we had the privilege of

4    locating once we were given an investigator at the

5    federal court level.  This is a case that if we turn a

6    blind eye -- this court has the entire record of the

7    evidentiary hearing.  There is no doubt that the

8    affidavit that stands as the foundation of the state's

9    court's finding is materially false.

10          THE COURT:  Ms. Penrose, it strikes me

11   that, you know, we're trying to grapple with this very

12   new case, which admittedly creates a whole new set of

13   tensions and the dynamic.  That the best system is to

14   send this case back to the district court with

15   instructions to follow Pinholster and then that their

16   develop -- whatever ruling comes out of that, we can

17   look at the and if it comes back to us we will be in a

18   much better position to deal with whether there are

19   exactly what you can do and can't do in terms of the

20   scope of the material that you present in a quote -- in

21   a -- for the hearing.  As I read Justice Briar's

22   concurring opinion and Justice Aledo's concern about the

23   narrowness of it, this is a -- really uncertain what the

24   future course is of this is exactly the scope of it.

25   Very clear what the court says about the evidence, but

1  how that's going to be applied. So I think it would be

2  unwise for us to try to do that here and now. Let the

3  district court look at it and you try to do -- argue

4  with them and do the best you can in that district

5  court. Until we have a record that grapples with a

6  application of the Supreme Court decision and what ought

7  to be accepted, not accepted and then in that context,

8  we can look at it. I'm very cautious about jumping off

9  -- for us to jump off and try to define exceptions and

10  do more with it than that. In other words, they say

11  vacate it or manage the district court for consideration

12  (inaudible) and decide the case.

13               MS. PENROSE: Absolutely, Your Honor.

14  Unlike the petitioner, who suggested that Judge Stickney

15  could not be trusted or Judge Fish who ultimately

16  decided the case at the district court level to sua

17  sponte follow the law, I think the thoughtful opinion

18  that was issued by the court demonstrates certainly the

19  judge would follow the law. And it would provide the

20  judge who made the facts and determinations to reassess

21  it in light of this brand new case. When the court

22  asked us for a letter briefing that was what we thought

23  was the proper solution. To remand back to the district

24  court and allow the district court in the first instance

25  to make that call. So this court doesn't presuppose

1  factual findings that transcend the state record.  It is

2  going to be difficult for any court now reviewing this

3  case to ignore the fact that we have a materially false

4  affidavit.  I don't know how the federal court can turn

5  a blind eye to truth we now have.  This individual

6  was -- this individual that was convicted and sentenced

7  to death.  This is a capital case.  This individual was

8  sentenced to death and the state court refused to give

9  him a evidentiary hearing to elucidate the falseness of

10  the affidavit testimony of his attorney.  The federal

11  government --

12            THE COURT:  I think we have the argument

13  and I think you need to realize that we're not the body

14  that's going to make this decision.  So if it's, I mean,

15  we're not rendering.  If we don't render, if it's

16  remanded --

17            MS. PENROSE:  Right.

18            THE COURT:  -- then you have an

19  opportunity as Judge --

20            MS. PENROSE:  Absolutely, Your Honor

21  and --

22            THE COURT:  To try to prove that it's

23  false and to try to come within the exception that

24  you're trying to arrive on.

25            MS. PENROSE:  Absolutely.  And I

1  appreciate that, Your Honor, but we do -- we would

2  embrace the invitation of the court to remand back to

3  the district court to allow them to decide how Cullen

4  does impact the decision, was rendered and see if it

5  alters any decision that was made by the court.  Would

6  the court like then to hear anything on the issue of

7  exhaustion or any of the other issues that were briefed

8  by the court -- asked to be briefed by the parties?  Are

9  there any other questions the court has?

10              THE COURT:  We've read your briefs and

11  your -- I mean, unless my colleagues have any additional

12  questions.

13              THE COURT:  Thank you.

14              MS. PENROSE:  Thank you very much, Your

15  Honor.

16              THE COURT:  Ms. Penrose you're a great

17  advocate and I think the district court will benefit

18  from hearing from you.

19              MS. PENROSE:  Thank you, Your Honor, I

20  appreciate it.

21              THE COURT:  And your court appointed, we

22  certainly thank you for your service.

23              MS. PENROSE:  Absolutely.  Thank you,

24  Your Honor.

25              THE COURT:  But we're still open to be

convinced otherwise if you have a few points in this

case.

            THE COURT:  That's right, if you want us

to render you better convince us.

            THE COURT:  We hadn't ruled quite yet.

            MS. HAYES:  I have just a few points to

address.  One of the arguments was that Cullen does not

actually speak to the D2 analysis.  Footnote 7 in Cullen

talks about -- they address Justice Sotamayor discussion

that D2 doesn't include the same kind of language that

they were addressing in Cullen.  And the court says that

the admission of that language in D2 is doesn't detract

from their view, that D1 is also plainly limited to the

state court record.  Obviously, the language of D2 says

that the facts are unreasonable in light of the evidence

presented in state court.  So even though Cullen is a D1

opinion, it's sort of a given that D2 would fall under

the same line.

            The second argument was talking about

whether Cullen does prohibit evidentiary hearings.  It

pretty much does.  It almost completely restricts it.

And the court recognize that was one of the arguments by

Pinholster and they addressed it saying, E2, the

evidentiary hearing provision does have force, but only

if -- where a claim is not barred under the E2.  Like,

1  if the claim wasn't adjudicated on the merits in the

2  state court, maybe a federal court has discretion.  But

3  that discretion is obviously still restricted by the E2

4  language.

5                    So Cullen very clearly limits and

6  prohibits federal court's from having hearings like

7  happened in this court -- or in the lower court because

8  the ineffective assistance claim was adjudicated on the

9  merits they could not have a hearing and they could not

10 expand the record.  That's the first two big errors from

11 the lower court.  There's been an argument raised that

12 the federal court when it had it's hearing that it was

13 really to test the reasonableness of the attorneys

14 affidavit.  In the record page 278, 279, is the order

15 from the district court establishing the issues for the

16 hearing.  And it just says that we're going to hear

17 evidence from the parties on petitioners second, third

18 and fourth grounds in which he asserts that trial

19 counsel were ineffective for failing to present

20 mitigating evidence at trial.  Including petitioner's

21 prison record, evidence of his life after being paroled

22 and psychiatric evidence.

23                    There's no indication from the record

24 that the court's indicating that it wants to test the

25 credibility of trial court's affidavit.  And what ended

1  up happening is that it pretty much opened the flood

2  gates to all the evidentiary development.  And the court

3  had encouraged the parties to submit affidavits because

4  it said we don't want to hear from everyone, let's try

5  to get straight to the issue.  By opening the door

6  saying lets bring in all kinds of new evidence.

7            There's certainly no indication they're

8  just trying to test the reasonableness of counsel's

9  affidavit.  There's been an argument made that counsel's

10  affidavit doesn't include -- is not based on personal

11  knowledge and there are places in the affidavit where he

12  refers to we.  We did such and such.  He was the chief

13  public defender and the public defender's office was

14  appointed to the case.

15            He had the assistance of an investigator.

16  He had two different cocounsel at different times and

17  also two investigators -- or two experts.  A

18  psychologist and a psychiatrist.  And when in his

19  affidavit when he refers to we, there's parts where he

20  talks to the investigator Dana Rice and says that we

21  conferred about such and such and decided this is what

22  the approach was.  So it's not some condemnation of his

23  performance or it's not some falsity for him to use the

24  term we.  If anything, he was certainly being more

25  specific to let the court know when it was something

involved from the team and not from himself,

individually.

The state habeas affidavits or the fact

that they've tried to complain of counsels affidavits as

being false, there are only two affidavits that counsel

was really addressing in state court during his

affidavit. And in the affidavit of Larry Revel,

counsel, John Curry, candidly admitted there's nothing

in the records that show that they contacted Larry Revel

or that they made -- or they sent him a letter. That he

discussed it with his investigator. We believe we

didn't follow up because we already had the owners of

the business we had enough information about his work

habits.

Regarding the affidavit of Ken Bishop,

counsel specifically said you know, we did refer to, we

did call Ken Bishop, we did talk to Ken Bishop. And

during the federal hearing we actually pointed out in

the records -- in trial court's records, the evidence,

the handwritten notes showing that they did talk to this

individual. I see that my time is expired. I would

certainly just ask the Court not to remand this case

since the record is as complete as it ever will be.

Please just reverse and render the district court's

decision.

1                    THE COURT:  Thank you for your argument.

2    Court is in recess.