UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| FARYION EDWARD WARDRIP,<br>Petitioner, | §<br>§<br>§ | |
| V. | §<br>§ | Civil Action No. 7:01-CV-247-G-BF |
| LORIE DAVIS, Director,<br>Texas Department of Criminal Justice<br>Correctional Institutions Division,<br>Respondent. | §<br>§<br>§<br>§<br>§ | (Death Penalty Case) |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner Faryion Edward Wardrip ("Wardrip") has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, upon which relief was conditionally granted on his claim that he was deprived of the effective assistance of counsel because his trial counsel failed to investigate and present evidence of his good prison record. Following the Court of Appeals' remand to reconsider that grant of relief in light of *Cullen v. Pinholster,* 563 U.S. 170 (2011), this case was again referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), implemented by automatic reference under Special Order 3-251. Because the state court adjudication was based on an unreasonable determination of the facts based on the record before the state court, and this Court's own review shows that habeas relief is warranted, conditional habeas relief should again be **GRANTED**.

**I**

Wardrip pleaded guilty to the offense of the capital murder of Terry Simms during a burglary of her residence and aggravated sexual assault. Following a transfer of venue and a sentencing trial, he was sentenced to death. *See State v. Wardrip,* No. 35,606-A (30th Dist. Ct., Wichita Co., Tex.);

*State v. Wardrip,* No. F-99-0988-E (367th Dist. Ct., Denton Co., Tex., Nov. 5, 1999). His conviction

and sentence were affirmed on direct appeal. *See Wardrip v. State,* 56 S.W.3d 588 (Tex. Crim. App.

2001). Wardrip filed an application for a post-conviction writ of habeas corpus on October 26, 2000.

*See* State Habeas Record ("SHR") at 4. The state district court sitting in review of the habeas

petition (hereinafter State Habeas Court), recommended that relief be denied. *See Ex parte Wardrip,*

No. 35,606-A (30th Dist. Ct., Wichita Co., Tex. June 18, 2001); SHR 130-63. These findings and

recommendation were adopted by the Texas Court of Criminal Appeals (hereinafter CCA). *See Ex*

*parte Wardrip*, No. WR-49,657-02 (Tex. Crim. App., Nov. 14, 2001).

Wardrip subsequently filed a petition for writ of habeas corpus in this Court on December

31, 2002, including a request for an evidentiary hearing. (Pet., doc. 22.) Respondent filed his

answer (Ans., doc. 34), and Wardrip filed his reply to the Answer. (Reply, doc. 44.) Following

arguments, the undersigned granted an evidentiary hearing (Order, doc. 56), which was conducted

on October 11, 2006, and November 1, 2006. Following post-hearing briefs, the undersigned made

findings and a recommendation to grant relief on Wardrip's claim that he was deprived of his right

to the effective assistance of counsel in the punishment phase of his trial because his trial counsel

failed to investigate and present evidence of Wardrip's mitigating prison record and commendable

behavior while he was previously in prison for murder. (Rec., doc. 102.) These findings and

recommendation were accepted by the district court, which granted relief from the sentence of death.

(Order, doc. 110; Judgment, doc. 111.)

Respondent appealed this Court's judgment conditionally granting habeas relief. (Notice,

doc. 113.) Wardrip did not make any cross appeal. Following the Supreme Court's opinion in

*Cullen v. Pinholster,* 563 U.S. 170 (2011), the Court of Appeals vacated this Court's prior judgment

2

and remanded this case for reconsideration. *See Wardrip v. Thaler,* 428 F. App'x 352 (5th Cir. 2011). Subsequently, the Supreme Court decided *Martinez v. Ryan,* 566 U.S. 1 (2012), that created a new exception to procedural bar to claims of ineffective assistance of trial counsel that were not presented to the state court because of the ineffective assistance of state habeas counsel. In *Trevino v. Thaler,* 569 U.S. 413 (2013), the Supreme Court applied this new exception to Texas cases.

## II

The Court of Appeals vacated and remanded this Court's decision to grant punishment relief "for reconsideration in light of the Supreme Court's decision in *Cullen v. Pinholster,* [563 U.S. 170] (2011)." *Wardrip,* 428 F. App'x at 352. Since the appeal was limited to the decision to grant relief on Wardrip's claim that his trial counsel was ineffective in failing to investigate and present mitigating evidence of his good prison record, the disposition of the other claims is beyond the remand. This Court's prior decision to grant relief was based, in part, on evidence received at a hearing before this Court. In *Pinholster,* however, the Supreme Court held that the federal court could not consider evidence that was not before the state court in making the determination of reasonableness under 2254(d). *Pinholster,* 563 U.S. at 185. Therefore, the preliminary issue before this Court is whether Wardrip has satisfied 28 U.S.C. § 2254(d) based only on the record before the state court.

The limitation referenced in *Pinholster* was added by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") that set forth the preliminary requirements that must be satisfied before reaching the merits of a claim made in a federal habeas proceeding under 28 U.S.C. § 2254. If the state court denies a claim on the merits, a federal court may not grant relief unless it first determines that the claim was unreasonably decided by the state court, as defined in § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim——

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Pinholster, 563 U.S. at 181-85 (discussing application of § 2254(d)).

In the context of § 2254(d) analysis, "adjudicated on the merits" is a term of art referring to a state court's disposition of a case on substantive rather than procedural grounds. Green v. Johnson, 116 F.3d 1115, 1121 (5th Cir. 1997). This provision does not authorize habeas relief, but restricts this Court's power to grant relief to state prisoners by barring claims in federal court that were not first unreasonably denied by the state courts. The AEDPA limits rather than expands the availability of habeas relief. See Fry v. Pliler, 551 U.S. 112, 119 (2007); Williams v. Taylor, 529 U.S. 362, 412 (2000). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Richter, 562 U.S. at 98. "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt.'" Pinholster, 563 U.S. at 181 (internal citations omitted) (quoting Richter, 562 U.S. at 102, and Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)).

Under the "contrary to" clause, a federal court is not prohibited from granting federal habeas relief if the state court either arrives at a conclusion opposite to that reached by the United States

Supreme Court on a question of law or decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *See Williams*, 529 U.S. at 412-13; *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court may also reach the merits of a claim on federal habeas review "if the state court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case." *White v. Woodall,* 134 S. Ct. 1697, 1705 (2014) (quoting *Williams*, 529 U.S. at 407-408). " '[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions.' " *Woodall,* 134 S. Ct. at 1702 (quoting *Howes v. Fields,* 132 S. Ct. 1181, 1187 (2012)). The standard for determining whether a state court's application was unreasonable is an objective one and applies to federal habeas corpus petitions that, like the instant case, were filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

Therefore, federal habeas relief is not available on a claim adjudicated on the merits by the state court unless the record before that state court first satisfies § 2254(d). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 563 U.S. at 185. The evidence required under § 2254(d)(2) must show that the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In the event the state court adjudication is deemed unreasonable, the federal court must determine *de novo* whether habeas relief is appropriate. "When a state court's adjudication of a

claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires." *Panetti v. Quarterman*, 551 U.S. 930, 953-954 (2007). Therefore, when a state prisoner makes the showing required under § 2254(d), the federal court may conduct whatever hearings and evidentiary development are necessary to properly resolve the claims at issue. *See, e.g., Smith v. Cain*, 708 F.3d 628, 635 (5th Cir. 2013) (holding that district court did not err in conducting the evidentiary hearing upon which habeas relief was granted); *Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010) ("when a petitioner makes a prima facie showing of mental retardation, a state court's failure to provide him with an opportunity to develop his claim deprives the state court decision of the deference ordinarily due under the AEDPA"); *Hayes v. Thaler*, 361 Fed. App'x 563, 566 (5th Cir. 2010) (applying *Panetti* standard in review of a *Batson* jury selection habeas claim).

### III

#### A. <u>Standard</u>

Claims of ineffective assistance of counsel are measured by the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong of *Strickland* requires the defendant to show that counsel's performance was deficient. *Id.* at 687. The second prong of this test requires the defendant to show prejudice resulting from counsel's deficient performance. *Id.* at 694. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Id.* at 697.

In measuring whether counsel's representation was deficient, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997). "It is well settled that effective assistance is not

equivalent to errorless counsel or counsel judged ineffective by hindsight." *Tijerina v. Estelle*, 692 F.2d 3, 7 (5th Cir. 1982). A court reviewing an ineffectiveness claim must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action might be considered sound trial strategy. *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

To satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's errors were so egregious "as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The test to establish prejudice under this prong is whether "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability under this test is "a probability sufficient to undermine confidence in the outcome." *Id.*

In determining whether trial counsel was ineffective in failing to investigate and present mitigating evidence, the deference owed to counsel's strategic judgments is defined in terms of the adequacy of the investigations supporting those judgments. As set forth in *Strickland*,

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-691. This language was quoted in *Wiggins v. Smith*, 539 U.S. 510 (2003), in which the Supreme Court observed:

Our opinion in *Williams v. Taylor* is illustrative of the proper application of these standards. In finding Williams' ineffectiveness claim meritorious, we applied *Strickland* and concluded that counsel's failure to uncover and present voluminous mitigating evidence at sentencing could not be justified as a tactical decision to focus on Williams' voluntary confessions, because counsel had not "fulfill[ed] their obligation to conduct a thorough investigation of the defendant's background." 529 U.S., at 396, 120 S.Ct. 1495 (citing 1 ABA Standards for Criminal Justice 4-4.1, commentary, p. 4-55 (2d ed.1980)). While *Williams* had not yet been decided at the time the Maryland Court of Appeals rendered the decision at issue in this case, cf. post, at 2546 (SCALIA, J., dissenting), Williams' case was before us on habeas review. Contrary to the dissent's contention, *ibid.*, we therefore made no new law in resolving Williams' ineffectiveness claim. *See Williams,* 529 U.S., at 390, 120 S.Ct. 1495 (noting that the merits of Williams' claim "are squarely governed by our holding in *Strickland*"); *see also id.,* at 395, 120 S.Ct. 1495 (noting that the trial court correctly applied both components of the *Strickland* standard to petitioner's claim and proceeding to discuss counsel's failure to investigate as a violation of *Strickland's* performance prong). In highlighting counsel's duty to investigate, and in referring to the ABA Standards for Criminal Justice as guides, we applied the same "clearly established" precedent of *Strickland* we apply today. *Cf.* 466 U.S., at 690-691, 104 S.Ct. 2052 (establishing that "thorough investigation[s]" are "virtually unchallengeable" and underscoring that "counsel has a duty to make reasonable investigations"); *see also id.*, at 688-689, 104 S.Ct. 2052 ("Prevailing norms of practice as reflected in American Bar Association standards and the like ... are guides to determining what is reasonable").

In light of these standards, our principal concern in deciding whether [trial counsel] exercised "reasonable professional judgmen[t]," *id.,* at 691, 104 S.Ct. 2052, is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of Wiggins' background was itself reasonable. *Ibid. Cf. Williams v. Taylor, supra,* at 415, 120 S.Ct. 1495 (O'CONNOR, J., concurring) (noting counsel's duty to conduct the "requisite, diligent" investigation into his client's background). In assessing counsel's investigation, we must conduct an objective review of their performance, measured for "reasonableness under prevailing professional norms," *Strickland,* 466 U.S., at 688, 104 S.Ct. 2052, which includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time," *id.,* at 689, 104 S.Ct. 2052 ("[E]very effort [must] be made to eliminate the distorting effects of hindsight").

539 U.S. at 521-23.

In assessing prejudice, the court reweighs the evidence in aggravation against the totality of available mitigating evidence. *Id.* at 534. A habeas petitioner demonstrates prejudice under *Strickland* from counsel's failure investigate and present mitigating evidence by showing that the "mitigating evidence, taken as a whole, 'might well have influenced the jury's appraisal' of [the petitioner's] moral culpability," *Id.* at 538 (quoting *Williams,* 529 U.S. at 398); *see also Canales v. Stephens,* 765 F.3d 551, 570 (5th Cir. 2014) (applying same standard).

## B. **Evidentiary Development**

Generally, this Court has discretion to grant an evidentiary hearing if one is not barred under § 2254(e)(2). *See Schriro v. Landrigan,* 550 U.S. 465, 468 (2007). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro,* 550 U.S. at 474. Similarly, Texas state courts generally require "post-conviction applicants for writs of habeas corpus to plead specific facts which, if proven to be true, might call for relief." *Ex parte Medina,* 361 S.W.3d 633, 637 (Tex. Crim. App. 2011).

Evidentiary development is particularly important in addressing claims of ineffective assistance of trial counsel. In creating a new exception to procedural bar, the Supreme Court recognized the importance of evidentiary development for claims of ineffective assistance of trial counsel, which requires the assistance of state habeas counsel. "While confined to prison, the prisoner is in no position to ***develop the evidentiary basis*** for a claim of ineffective assistance, which often turns on evidence outside the trial record." *Martinez,* 566 U.S. at 12 (emphasis added). The Supreme Court explained that this would be a sound reason that a state may have for moving the presentation of ineffective-assistance-of-trial-counsel claims from the direct appeal that is limited

to the trial record to collateral proceedings where further evidence could be developed. "Ineffective-assistance claims often depend on evidence outside the trial record. Direct appeals, ***without evidentiary hearings,*** may not be as effective as other proceedings for developing the factual basis for the claim." *Id.* at 13 (citing *Massaro v. United States,* 538 U.S. 500, 505 (2003)) (emphasis added).

In *Trevino,* Supreme Court applied this new exception to Texas cases precisely because of the importance of developing the evidence necessary to properly consider these claims and the inadequacy of the direct appeal for the necessary evidentiary development. "It would have been difficult, perhaps impossible, within [the time frame for filing a motion for new trial] to investigate Trevino's background, determine whether trial counsel had adequately done so, and then ***develop evidence*** about additional mitigating background circumstances." *Trevino,* 569 U.S. 413, 133 S. Ct. at 1919 (emphasis added). "Thus, as the Court of Criminal Appeals has concluded, in Texas 'a writ of habeas corpus' issued in state collateral proceedings ordinarily 'is essential to ***gathering the facts necessary*** to . . . evaluate . . . [ineffective-assistance-of-trial-counsel] claims.'" *Id.,* 133 S. Ct. at 1918 (citing *Ex parte Torres,* 943 S.W.2d 469, 475 (1997) (en banc) and *Robinson v. State,* 16 S.W.3d 808, 810-811 (Tex. Crim. App. 2000)) (emphasis added). The Supreme Court reasoned that the *Martinez* exception should be applied out of fairness to allow inmates the opportunity to develop that evidence whether they are required to present the claim in collateral proceedings as a matter of state law or as a purely practical matter: "were *Martinez* not to apply, the Texas procedural system would create significant unfairness." *Trevino,* 133 S. Ct. at 1919.

> The right involved–adequate assistance of counsel at trial–is similarly and critically important. In both instances practical considerations, such as the need for a new lawyer, the need to ***expand the trial court record***, and the need for sufficient time ***to***

> **develop the claim**, argue strongly for initial consideration of the claim during collateral, rather than on direct, review.

*Id.,* 133 S. Ct. at 1921 (citing *Martinez,* 566 U.S. at 13-14) (emphasis added).

## C. <u>Analysis</u>

The language and reasoning for both *Martinez* and *Trevino* rely upon the need to allow inmates a meaningful opportunity to develop the evidence necessary to properly consider their claims of ineffective assistance of trial counsel. *See Trevino,* 133 S. Ct. 1911, 1920 (citing *Robinson,* 16 S.W.3d at 810). This is particularly important when the petition's factual allegations, if true, would entitle the applicant to federal habeas relief. *See Schriro,* 550 U.S. at 468.

The most troubling aspect of this case is whether Wardrip ever had the opportunity to meaningfully develop the evidence regarding his claim that trial counsel was ineffective. There are certain things that a litigant can obtain by investigation, but other things that they can only get if given the opportunity to compel the evidence from a hostile witness. Trial counsel cannot be expected to volunteer, by affidavit or otherwise, information that would reveal that he or she provided ineffective assistance. *See Jones v. Polk,* 401 F.3d 257, 274 (4th Cir. 2005).

> The natural reluctance of defense trial counsel to cooperate with habeas counsel in an ineffective assistance claim is well known. Trial counsel is understandably hesitant to "help[] a former client publicly criticize his reputation;" indeed, a successful claim may draw the attention of the disciplinary body that polices lawyer conduct.

*Id.* (citing Meredith J. Duncan, *The (So-Called) Liability of Criminal Defense Attorneys: A System in Need of Reform,* 2002 B.Y.U. L.Rev. 1, 27-28 (2002)). The types of things that might only be known if revealed by trial counsel would include what trial counsel knew, what investigation was conducted or made available to counsel, and what decisions counsel made regarding those

11

investigations. These are among the things that might only be discovered by compelling counsel to testify.

In the instant case, the undersigned previously determined that evidentiary development was needed on Wardrip's claim that trial counsel provided ineffective assistance for failing to investigate and present mitigating evidence of his prison record. Although the state court denied an evidentiary hearing, this is not a case where the state court chose factual development through a method other than a live evidentiary hearing. Wardrip made these same allegations before the state court that, if true, would have supported habeas relief, and his state habeas counsel duly sought an evidentiary hearing. (Rec. at 14-15.) The state court denied any evidentiary development, finding that "no unresolved factual issues material to the legality of the applicant's confinement exist[ed]." (SHR 34, 131.) This finding deprived Wardrip of any opportunity to compel evidence from trial counsel, specifically including whether counsel made a strategic decision to not investigate or present evidence of Wardrip's good prison record.

Without any means to compel evidence from trial counsel in state court, Wardrip "had no meaningful opportunity to challenge *Strickland's* presumption that trial counsel acted reasonably." *Lambert v. Warden Greene SCI,* 861 F.3d 459, 472 (3d Cir. 2017). In these situations, "it 'is virtually impossible to demonstrate prejudice as required' without an evidentiary hearing." *Sutton v. Carpenter,* 745 F.3d 787, 792 (6th Cir. 2014) (citing *State v. Blackmon,* 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001)).

Even though the state court found that no fact issues existed and denied any evidentiary development, it then proceeded to make findings that ***resolved disputed factual issues*** against Wardrip, accepting the state's version as true and finding Wardrip's version to be false.

12

13. The trial court ***accepts as true and correct*** the facts as detailed in the respondent's answer. However, on pages 11 and 20 of the respondent's answer, the respondent cites to trial counsel's affidavit as "application." The respondent is obviously citing to the affidavit.

14. The trial court ***accepts as true and correct*** the facts as detailed in the affidavit submitted by trial counsel, John F. Curry.

<u>Ineffective Counsel Claim One -- the applicant's good prison record:</u>

15. The applicant claims that trial counsel was ineffective for failing to introduce evidence of the applicant's good prison record. (<u>See</u> application, p. 8.)

16. The assertion that trial counsel failed to investigate this issue is ***FALSE***. (<u>See</u> application, p. 9.)

(SHR 131-132) (emphasis added).

After denying Wardrip any opportunity to cross-examine trial counsel Curry, the state court

quoted from the affidavit that Curry provided to the State as follows:

> I realized that any changes that might have occurred to Faryion in the years since the murders took place would have some impact on the jury's deliberation on the future dangerousness special issue. <u>If there was significant evidence that Faryion had changed or rehabilitated himself while in prison, this was certainly something the jury needed to know</u>. Unfortunately, it was my feeling that this was going to be difficult to prove unless Faryion could get on the witness stand. Regardless of however many witnesses might testify to what they knew of Faryion after his release from prison, ultimately, he would have to persuade the jury.

> After careful consideration of the information that was available to me, I decided to reject the idea of trying to prove to the jury that Faryion was a different man. First, our investigator did not reveal the kind of witnesses that I felt were necessary to prove this to a jury. The reality of the situation was that few of the people that Faryion asked us to talk to were willing to help him. I believe that the reason for their reluctance was the second thing that made me reject this defense: Faryion had lied to them about why he had been to prison. It is understandable to me why he didn't tell the people he met in Olney about having been to prison for murder, and perhaps a jury might have understood, but I felt it undercut in a serious way any attempt to show that Faryion had changed. Additionally, the State had the [sic] videotaped the mediation sessions between Faryion and Tina Kimbrew's father while he had been in prison and he had clearly lied to him. Some of this information did

get in front of the jury when Mr. Kimbrew testified on rebuttal, but I don't think it had the same impact as seeing it on those videotapes. I also don't believe it was as damaging given the information that we did present to the jury and the arguments I made based on that evidence. However, all of this made it impossible for Faryion to testify.

If the jury questioned Faryion's sincerity, any hope of saving his life because he had changed was going to be lost. Given everything that I knew, I thought it was too risky to present the case for life on that basis. <u>In the end, it appeared to me that the best hope we had of getting a life sentence was to rely on some information that the State could not effectively rebut and that was the fact that Faryion had spent almost 12 years in prison and had only two minor disciplinary reports.</u>

One of the things that I thought hurt us most was the fact that Faryion had been sentenced to 35 years in prison for the murder of Ms. Kimbrew and had been released after only doing about a third of it. Consequently, the jury was going to be confronted with the existence of parole in a very real way. Unfortunately, there was no way that I could think of which could hide this from the jury, so I tried to address it during voir dire.

<u>I attempted to make something positive out of it by showing the jury that Faryion could conform his conduct to the rules and regulations of prison and not be a threat to other inmates or the staff in the prison. I was fortunate in that the State provided to the jury the documentation which showed Faryion's disciplinary history during the time he spent in prison.</u> As I previously mentioned, there were only two minor problems: one involving a loud argument with an other inmate and the other involving a dispute over at t.v. that he and another inmate were watching. In neither case was there any violence on Faryion's part and neither led to any significant punishment on his part.

(SHR 132-34 (citing Curry aff. at 8-10)) (emphasis added by state court). In this affidavit, trial counsel explains that he rejected the strategy of trying to prove that Wardrip was a "changed man" after his earlier prison sentence because of the reluctance of witnesses and Wardrip's lies to the people of Olney regarding why he had been to prison. Instead, trial counsel focused on Wardrip's time in prison as his trial strategy.

In spite of Curry's statement that Wardip's best hope of getting a life sentence was to show his good prison record during almost 12 years in prison, Curry's affidavit did not address whether

14

he attempted to contact any witnesses from the prison system who might be able to testify about it. In fact, Curry's affidavit does not state whether he made a conscious decision either to pursue or not to pursue an investigation into Wardrip's conduct in prison. The only mention of any such evidence presented to the jury is that Curry "was fortunate in that the State provided to the jury the documentation" of his prison record. This language suggests that this document being in front of the jury was the result of a favorable accident rather than an intentional decision by trial counsel.

Another passage quoted by the state court in its consideration of this claim creates some confusion regarding trial counsel's strategy and his view of the importance of presenting evidence of Wardrip's good prison record.

> I know that Faryion had a good work record while in prison. By all accounts he was a model prisoner. But I felt that whatever good things he might have accomplished in prison were not really relevant to the argument I was trying to make. I wanted the jury to know one thing: that society would be more than adequately protected by sentencing Faryion to life in prison. Whether he contributed to prison society was not relevant to that argument. Additionally, I think it was susceptible to rebuttal by the State by arguing that he was just trying to impress the parole board and that it was just more manipulation of the system on his part. The State might have made this same point about Faryion's lack of problems in prison, but I think most jurors understand that prison can be a very violent place under even the best of circumstances.

(SHR at 1134-35 (quoting Curry aff. at 11).)

At first glance, this appears to contradict Curry's prior quoted statements regarding the importance of showing Wardrip's good prison record, including that it was Wardrip's best hope of getting a life sentence. But this may be an attempt to parse out different aspects of Wardrip's conduct in prison in order to explain why he did not attempt to introduce any evidence of those other aspects of Wardrip's prison record. Of course, this would magnify the importance of investigating the available witnesses in prison to know what they could testify about and how easily it would be

to present an effective case that presented only one aspect of his conduct in prison. But while both versions of Curry's statements suggest that he knew at the time the affidavit was made that Wardrip had been a model prisoner, neither statement includes any details regarding what pretrial investigation counsel conducted into Wardrip's prison record, what witnesses could have testified, or what those witnesses could have said. And of course, Wardrip had no opportunity to examine counsel regarding his actual knowledge, intent or the extent of his investigation.

After citing the above, the state court found that trial counsel made a strategic decision to not present the defense's own evidence of Wardrip's good prison record.

19. The court finds that trial counsel was aware of the applicant's "good" prison record.

20. Trial counsel made a strategic decision as to what evidence to present and not to present.

21. Trial counsel made a tactical decision to rely on the State's evidence to show the applicant's prison record. (See Curry affidavit, p. 10.)

22. Therefore, evidence of the applicant's "good", prison record was before the jury and the jury could draw whatever inference it wished from it.

(SHR at 135.) It is not clear why the state court put the word "good" in quotation marks, but it suggests some doubt about the value of the evidence of Wardrip's prison record that differ from at least some of the views expressed in trial counsel's affidavit.

Based on these findings, the state court denied the claims as not having been proven, even though it had earlier denied the opportunity for Wardrip to compel any evidence by finding that there was no factual issue to be resolved. It further concluded, "[t]rial counsel's decision to utilize the State's evidence to show the applicant's prison record, rather than to independently introduce evidence, is a legitimate trial strategy or tactic." (SHR at 155 (citing *Jones v. State,* 986 S.W.2d 358,

16

362 (Tex. App.--Beaumont 1999, pet. ref'd).)  The cited authority *Jones,* however, was not based on an insufficient investigation by trial counsel.

Although the state court did not explicitly find that trial counsel made a strategic decision to limit his investigation of Wardrip's good prison record, it is implied by the state court findings that counsel made a "strategic" and "tactical" decision to rely upon the state's evidence of it.  The Supreme Court has long established that the reasonableness of strategic choices made after less than complete investigation are to be judged by the reasonableness of the professional judgments supporting the limitations on the investigation itself.  *See Strickland,* 466 U.S. at 690-691.  The initial focus of a court faced with this question is on whether the investigation supporting counsel's decision to not introduce the mitigating evidence was itself reasonable.  *See Wiggins,* 539 U.S. at 522-23.  This requires the court to engage in a context-dependent evaluation of the extent of the mitigation investigation, whether counsel actually made a decision to limit the scope of that investigation and, if so, what counsel considered in making that decision.

In light of the absence of any evidence before the state court regarding trial counsel's pretrial investigation and whether or not he made a conscious decision to not look for any potential witnesses from the prison system, the state court finding that counsel acted strategically in this matter is speculative.  *See, e.g., United States ex rel. Hampton v. Leibach,* 347 F.3d 219, 235-36 (7th Cir. 2003) (concluding that evidentiary hearing was necessary to resolve ineffective-assistance claim, since state court's determination that defense counsel acted strategically was "entirely speculative").  Accordingly, the state court's denial of this claim is based on an unreasonable determination under § 2254(d)(2) that counsel acted strategically without any supporting evidence regarding the

17

thoroughness of trial counsel's investigation or that he made any decision to limit the investigation before the state court.

This lack of evidence resulted from the state court's determination that no disputed, previously unresolved fact issues existed, which cannot be reconciled with the same court's findings resolving those disputed fact issues against Wardrip. This is not the type of individual fact finding that might be subsumed into an otherwise reasonable adjudication of a claim by a state court after factual development. *See Storey v. Stephens,* No. 4:11-CV-433-O, 2014 WL 11498164, at *7-8 (N.D. Tex. June 9, 2014) (O'Connor, D.J.), *COA denied, Storey v. Stephens,* 606 F. App'x 192, 195-96 (5th Cir.), *cert. denied,* 136 S. Ct. 132 (2015). Instead, this finding effectively prevented the state prisoner from any opportunity to develop essential evidence in support of this claim in the state court, evidence that might not otherwise be obtainable. *See Jones,* 401 F.3d at 274. Accordingly, the state court's adjudication of this claim is also based on its unreasonable determination that no disputed factual issues existed. This satisfies § 2254(d)(2) as well.

Because the state court record itself shows that § 2254(d)(2) is satisfied, this Court must make a determination of whether habeas relief is warranted without the deference that the AEDPA otherwise requires. *See Panetti,* 551 U.S. at 953-954; *Smith,* 708 F.3d at 635; *Wiley,* 625 F.3d at 207. Accordingly, the Court may consider the evidence received at the evidentiary hearing previously conducted before this Court in determining whether to grant relief on the claim that trial counsel failed to investigate and present mitigating evidence of Wardrip's record and conduct during the time that he was incarcerated in prison.

IV

At the evidentiary hearing, Wardrip examined his trial counsel, John Curry, regarding the

reasons that he did not contact any witnesses who could testify about Wardrip's good conduct in

prison.  Counsel could not recall making any such strategic decision.

> At this hearing, [Curry] testified that, in September 1999, the State provided him
> Petitioner's educational records, his prison records, and some hospital treatment
> records, but it was his recollection that he had some of these records before that time.
> (10/11 EH:59).  He further testified that Petitioner had informed him that he had had
> only one minor disciplinary infraction while he was in prison for the murder of Tina
> Kimbrew. (10/11 EH:61).  Curry did not, however, attempt to contact any witnesses
> from the prison system who might be able to testify about Petitioner's time in prison.
> (10/11 EH:118-19, 122).  **He testified at the hearing that he did not recall why he
> did not attempt to discover or interview any witnesses with regard to
> Petitioner's life in prison and did not recall making a conscious decision either
> to pursue or not to pursue this type of evidence.** (10/11 EH:119-20, 122).

(Rec. at 22) (emphasis added) (footnote omitted).  This Court concluded that

> Curry did not make a strategic decision to end further investigation into
> Petitioner's prison record.  Instead, he testified that he did not contact any inmates
> or employees of the prison system who might have information about Petitioner and
> could not provide this Court with any reason for his failure to do so.  This Court
> therefore cannot find that Curry exercised "reasonable professional judgment," as
> defined by [*Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003)], in his decision to
> conduct at best an extremely limited investigation into Petitioner's prior prison
> record.  Instead, under the *Strickland* standard, as further explained by the Supreme
> Court in *Wiggins* and [*Rompilla v. Beard*, 545 U.S. 374 (2005)], trial counsel
> provided ineffective assistance of counsel by not further investigating Petitioner's
> record while in prison and providing no trial strategy for his failure to do so.
> Accordingly, the state court's determination that trial counsel provided effective
> assistance of counsel in this regard because he exercised a legitimate trial strategy is
> an unreasonable application of the *Strickland* standard.

(Rec. at 25-26.)

This Court also noted the evidence that was not presented at Waldrip's punishment trial.

> Petitioner has submitted to this Court records from the TDCJ reflecting that
> Petitioner attended classes while previously in prison, including art, special

19

education, horticulture and construction classes. These records also indicate that Petitioner took and passed the GED exam. (Pet. Rec. Ex. #20). Petitioner has also submitted evidence that Petitioner wrote sports-related articles as a unit reporter for the monthly prison newsletter. (Pet. Rec. Ex. #21). Petitioner has also submitted an affidavit from his investigator, F. David Moore. In this affidavit Moore states that, as part of his investigation, he spoke with Sergeant Gary Faulkenberg of the Texas Department of Criminal Justice and that Faulkenberg remembered Petitioner from his previous time in prison and recalled that Petitioner participated in attempts to raise funds from the community to assist a young man with emergency medical needs. Moore also states in his affidavit that all other employees of TDCJ he contacted were reluctant to cooperate, fearing reprisals from their immediate supervisors. (Pet. Ex.:#D-14 [Rec. Ex. #28]). Respondent has also submitted a direct affidavit from Faulkenberg, in which he states that he told Investigator Moore that Petitioner had no major disciplinary cases against him when he was incarcerated, but did not tell Moore about any charity fundraising event organized by Petitioner, and would not have willingly testified on Petitioner's behalf. (Resp. Ex. #R-32).

The parties have stipulated to this Court that, in August 1992, there was a fund-raiser held in the TDCJ unit where Petitioner resided for a local boy who needed an organ transplant. (Joint Advisory, 1/4/07). Finally, the parties have stipulated that, contained in the Wichita County District Attorney's files, which were open to Curry, were notes of an interview the State conducted with a man named Stephen Wood, who was in prison with Petitioner in 1997 before Petitioner and Wood were paroled. (Joint Advisory, 1/4/07). In these notes, it is stated that Wood described Petitioner as a "con man" and a "freak" with an anger problem, who had the guards and counselors fooled that he was a model prisoner, but who had another side to him when he got mad, such that the other inmates would stay out of his way. (Resp. Ex. #R-24).

(Rec. at 24-25.)

This Court then addressed the prejudice prong of *Strickland* and reviewed the evidence presented by Wardrip and Respondent on that issue, concluding that, had the evidence of Wardrip's prison record been presented, there is a probability that he would not have been sentenced to death sufficient to undermine confidence in the outcome of the sentencing trial.

In order for Petitioner to be sentenced to death, the jury had to, among other things, unanimously find that there was a probability that Petitioner would commit criminal acts of violence that would constitute a continuing threat to society. (Tr.:159-60, 162). As noted earlier, a note received by the trial court from the jury

20

indicates that at least one juror was interested in whether a continuing threat to society meant public or prison society. The trial judge did not, however, define the term "society" for the jury. In order to establish prejudice, Petitioner must show that there is a reasonable probability that, but for John Curry's failure to investigate and present evidence of Petitioner's record and behavior while previously in prison, the result of the proceeding would have been different. And in *Strickland,* the Supreme Court defined a "reasonable probability" as a probability sufficient to undermine confidence in the outcome. Accordingly, in order for Petitioner to be entitled to relief this Court must conclude that, had John Curry[] further investigated Petitioner's prison record and presented evidence of such at trial, there is a probability sufficient to undermine confidence in the outcome that Petitioner would not have been sentenced to death. ... Given the evidence from the jury note received by the trial judge indicating that the jury appeared to be deliberating about Petitioner's future dangerousness while in prison, given the fact that the jury was not given any information about parole eligibility, and given the fact that in order for the outcome of the proceeding to have been different only one holdout juror was needed to decline to answer the future dangerousness issue in the affirmative, this Court finds that a probability sufficient to undermine confidence in the outcome has been shown that Petitioner would not have been sentenced to death had his defense counsel presented any evidence about his nearly spotless record and his commendable behavior during his prior eleven-year incarceration.

(Rec. at 28-29.)

Aggravating evidence before the jury showed that while he was outside of the prison, Wardrip committed 5 murders, 3 aggravated kidnappings, 2 aggravated sexual assaults and a burglary of a habitation. (SHR at 156.) Given the question before the jury was whether Wardrip would receive a sentence of life in prison or death, and in light of the questions from the jury during deliberations, after reweighing the evidence in aggravation against the totality of available mitigating evidence, the "mitigating evidence, taken as a whole, 'might well have influenced the jury's appraisal' of [Wardrip's] culpability." *See Wiggins,* 539 U.S. at 538 (quoting *Williams,* 529 U.S. at 398).

This Court previously concluded that Wardrip was entitled to relief on this claim.

As the Supreme Court noted in both *Wiggins* and *Rompilla,* a federal court may determine that a state court's application of the *Strickland* standard is unreasonable when defense counsel fails to investigate potentially mitigating evidence without any

> reasonable strategy for failing to do so, fails to present such evidence, and it is shown that there is a probability sufficient to undermine confidence in the outcome that, had such evidence been presented, the defendant would not have been sentenced to death. Such has been shown here.

(Rec. at 29.) This prior conclusion that the state court's adjudication of this claim was an unreasonable application of the *Strickland* standard was based, in part, on evidence presented to this Court. Such a determination would violate *Pinholster*. But as set out in Section III above, the state court's adjudication of this claim is shown to be unreasonable under § 2254(d)(2) based solely on the record before the state court. Therefore, this Court's prior decision to grant relief was ultimately correct and should again be adopted in accordance with this revised analysis that includes the limitations of *Pinholster*.

### *Recommendation*

Wardrip's application for a writ of habeas corpus should be conditionally granted so that the respondent shall release him from custody unless the State of Texas either initiates proceedings for a new trial on the issue of punishment only, as permitted by TEX. CODE CRIM. PROC. Act. 44.29(c), or elects not to seek a death sentence and accedes to the imposition of a sentence of life imprisonment, within a reasonable time to be set by the Court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where

the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir.1996).

**SO ORDERED**.

DATED: November 29, 2017.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

23