IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| FARYION EDWARD WARDRIP, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION NO. |
| | ) | |
| ERIC GUERRERO, Director, Texas | ) | 7:01-CV-0247-G |
| Department of Criminal Justice, | ) | |
| Correctional Institutions Division, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER OVERRULING OBJECTIONS TO, AND ADOPTING, THE MAGISTRATE JUDGE'S FINDINGS, CONCLUSIONS, AND RECOMMENDATION

The matters before the court are: (1) the United States Magistrate Judge's findings, conclusions, and recommendation (docket entry 250) (henceforth, "FCR"); (2) the objections and "corrected" objections to the FCR filed by the petitioner Faryion Edward Wardrip ("Wardrip") (docket entries 252, 254); and (3) the respondent's objections to the FCR (docket entry 253). For the reasons explained below, Wardrip is not entitled to federal habeas relief from this court but is entitled to a Certificate of Appealability ("CoA") on two aspects of his claims. All objections to the FCR are overruled.

## I.  BACKGROUND

The FCR accurately set forth in great detail both the protracted procedural history of this federal habeas cause, as well as included citations to the voluminous state court record in Wardrip's case.  The court expressly adopts the Magistrate Judge's findings with regard to all such matters.  *See* FCR at 3-13.

To sum up the Magistrate Judge's findings, Wardrip pleaded guilty in 1986 to the murder of Tina Kimbrew and was sentenced to a lengthy prison term.  He served only a small fraction of that term (about ten years and seven months), however, before he was released on parole.  His parole release was apparently based, in part, on Wardrip's excellent behavior during his term of incarceration.  As a condition to his release on parole, Wardrip submitted a DNA sample to state officials.  Wardrip re-entered free society and soon established himself in Olney, Texas, as a productive employee and member of that community.  He apparently fulfilled all the conditions of his parole.  Subsequent DNA testing performed by state officials identified Wardrip as a suspect in the murders of two other young women – Terry Sims and Toni Gibbs – which took place around the time of the murder of Tina Kimbrew.  Police also suspected Wardrip of involvement in a fourth murder (of Ellen Blau).

When questioned by law enforcement authorities in 1999, Wardrip confessed to all three of those murders and volunteered that he had also committed a fifth murder (of Deborah Taylor), which took place shortly *before* Tina Kimbrew's murder.

Charged with capital murder in connection with Terry Sims's murder, Wardrip pleaded guilty. The evidence at trial included Wardrip's recorded confessions to all five murders; graphic evidence detailing the extensive violence inflicted on each of his victims; and Wardrip's recorded assertions that he was remorseful for his crimes, was the product of an abusive childhood, and committed his offenses while under the influence of alcohol and drugs. Wardrip's defense counsel presented only two witnesses, both of whom testified to Wardrip's good behavior as an employee and parolee while on parole in Olney for the brief period prior to his re-arrest. Wardrip's trial counsel also argued to the jury that Wardrip's excellent disciplinary record while in prison (Wardrip incurred just two minor, non-violent, disciplinary infractions) showed that Wardrip would not pose a threat of future violence if re-incarcerated. The jury answered the Texas capital sentencing special issues favorably to the prosecution.

After unsuccessfully challenging his conviction and death sentence via direct appeal and a state habeas corpus application, Wardrip sought federal habeas relief from this court. This court conditionally granted federal habeas relief. See *Wardrip v. Quarterman*, Findings, Conclusions, and Recommendation of the United States Magistrate Judge (docket entry 102) (N.D. Tex. July 25, 2008) (Stickney, J.), *report and recommendation adopted sub nom.* 705 F. Supp. 2d 593 (N.D. Tex. 2010) (Fish, J.). After a remand from the Fifth Circuit to address procedural issues arising from the

- 3 -

decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011), see *Wardrip v. Thaler*, 428 Fed. Appx. 352 (5th Cir. 2011) (per curiam), this court again conditionally granted federal habeas relief.  See *Wardrip v. Davis*, Findings, Conclusions and Recommendation of the United States Magistrate Judge (docket entry 190) (N.D. Tex. Nov. 29, 2017) (Stickney, J.), *report and recommendation adopted*, 2018 WL 1536279 (N.D. Tex. March 29, 2018) (Fish, J.).  The Fifth Circuit reversed and remanded, directing this court to address an issue which Wardrip convinced the Fifth Circuit this court had failed to decide, *i.e.*, whether Wardrip was entitled to federal habeas relief under 28 U.S.C. § 2254(d)(1).  See *Wardrip v. Lumpkin*, 976 F.3d 467 (5th Cir. 2020), *modified on rehearing*, 838 Fed. Appx. 99 (5th Cir. 2021) (per curiam), *cert. denied*, __ U.S. __, 142 S. Ct. 782 (2022).

Wardrip then filed a pleading styled "second amended petition for a writ of habeas corpus" in which he requested this court to conduct a *de novo* review of his remaining ineffective assistance claim.  *See* docket entry 239.  The respondent argued in opposition that (1) the more deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was applicable to Wardrip's ineffective assistance claim; (2) the state habeas court's factual findings and legal conclusions that Wardrip's trial counsel acted in an objectively reasonable manner in choosing not to investigate the circumstances of Wardrip's decade of imprisonment, *i.e.*, Wardrip's record of good behavior and few disciplinary charges

during the almost eleven years Wardrip was incarcerated in TDCJ foreclose federal habeas relief under AEDPA; and (3) Wardrip neither alleged any specific facts nor presented any evidence during his initial state habeas corpus proceeding satisfying the prejudice prong of the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See* docket entry 240. Wardrip filed a reply brief in which he argued that (1) the deficient performance of his trial counsel is established by review of only the evidence that was actually presented to the state habeas trial court, *i.e.*, in the affidavit of his state trial counsel (which Wardrip describes as a tacit admission that said counsel undertook virtually no investigation into the existence of potentially mitigating evidence before choosing to present only two witness at trial); and (2) *de novo* review of the record now before this court shows that Wardrip was prejudiced by his trial counsel's failure to investigate and present evidence showing Wardrip's good behavior and lack of disciplinary infractions while incarcerated. *See* docket entry 243.

## II.  OVERVIEW OF THE FCR

The Magistrate Judge concluded that, applying AEDPA deference, Wardrip's claim of ineffective assistance premised upon his trial counsel's failure to adequately investigate Wardrip's background (particularly Wardrip's good prison record) and to present available mitigating evidence was insufficient to satisfy the prejudice prong of a *Strickland* analysis. The reason for this determination was that Wardrip's state habeas counsel failed to either allege any facts, present any evidence, or request any

findings or conclusions from the state habeas trial court addressing the prejudice prong of *Strickland*. Under such circumstances, the Magistrate Judge determined that the conclusion of the Texas Court of Criminal Appeals that Wardrip had failed to satisfy the prejudice prong of *Strickland* was objectively reasonable. While the Magistrate Judge expressed clear dissatisfaction with the performance of Wardrip's initial state habeas counsel, she also correctly recognized that the Supreme Court's recent decisions in *Shinn v. Ramirez*, 596 U.S. 366, 371, 383-84 (2022), and *Shoop v. Twyford*, 596 U.S. 811, 819-20 (2022), effectively precluded further factual development by Wardrip of his claim in this court.

The Magistrate Judge also concluded that even when reviewed under the less deferential *de novo* standard, Wardrip's ineffective assistance claim still failed to satisfy the prejudice prong of *Strickland*. This is because (1) Wardrip's jury was presented with mitigating evidence showing (a) Wardrip's confessions and profession of remorse for his crimes, (b) his clean record while on parole, (c) his clean prison disciplinary record, (d) his assertions that he had been the victim of an abused childhood, (e) his assertion that he was under the influence of drugs and alcohol at the time of his offenses, and (f) Wardrip had successfully obtained employment in Olney after his release from prison and even earned a promotion to a position involving considerable responsibility; (2) the record from trial included extensive evidence showing that Wardrip's crimes involved not only premeditation but

- 6 -

considerable planning and significant deliberateness and sophistication in their execution; (3) despite his professed history of long-term drug and alcohol abuse, the record from trial established that Wardrip managed to obtain and maintain gainful employment (at both a hospital where he met one of his victims and a nightclub where he possibly met another victim) during the time frame in which he committed his string of murders; (4) Dr. Morris's diagnosis of Wardrip as displaying antisocial personality disorder (discussed extensively by the original Magistrate Judge in his FCR) and Dr. Morris's conclusion that Wardrip was not a reliable self-historian; (5) the fact that Wardrip had been released on parole once before and would still be eligible for release on parole if convicted of Terry Sims's murder (thus negating the argument relied upon by the original Magistrate Judge that the question of Wardrip's future dangerousness before the jury only applied to his dangerousness *within* the prison context); (6) the intensely violent and brutal nature of Wardrip's string of murders; (7) Wardrip's blatantly false profession to Tina Kimbrew's father during a recorded interview that he had never harmed anyone prior to his murder of Tina Kimbrew; and (8) the absence from the record currently before this court of evidence showing there were any witnesses (other than Wardrip whom his trial counsel reasonably concluded should not be called to testify) available at the time of Wardrip's trial who could have testified from personal knowledge regarding

Wardrip's good works while in prison or other matters in mitigation not otherwise already before the jury.

Simply put, the Magistrate Judge correctly concluded that Wardrip has failed to allege specific facts or present evidence showing a reasonable probability under *de novo* review that, but for the failure of his trial counsel to do a much deeper dive into Wardrip's background, there was a reasonable probability the jury would have answered any of the Texas capital sentencing special issues differently. As the Supreme Court has emphasized, a reasonable probability in this context means a probability sufficient to undermine confidence in the outcome of the proceeding. *Thornell v. Jones*, 602 U.S. 154, 163 (2024); *Strickland*, 466 U.S. at 694. "[This] requires a substantial, not just conceivable, likelihood of a different result." *Jones*, 602 U.S. at 163 (quoting *Pinholster*, 563 U.S. at 189) (citation and internal quotation marks omitted)).

Wardrip's jury was well aware that Wardrip had a clean record while on parole, virtually no disciplinary infractions during the almost twelve years Wardrip was incarcerated (save for two minor nonviolent infractions), and a solid record as a responsible employee and member of the community during his period of release on parole in Olney. Wardrip has wholly failed to allege or prove the existence of any new or additional evidence available at the time of his trial which would have added anything of genuine substance to the foregoing evidence had his trial counsel

undertaken the type of investigation Judge Higginbotham and the Magistrate Judge both believe should have been undertaken on Wardrip's behalf at the time of trial. Under such circumstances, Wardrip's ineffective assistance claim lacks arguable merit because, even under *de novo* review, there is no reasonable probability that the outcome of Wardrip's capital sentencing proceeding would have been any different but for the deficient performance of said counsel identified by Judge Higginbotham and the Magistrate Judge.

### III.  MERITLESS OBJECTIONS FROM BOTH PARTIES

Wardrip's reliance in his objections to the FCR based upon the Supreme Court's holding in *Buck v. Davis*, 580 U.S. 100 (2017), is unpersuasive.  The issue before the Supreme Court in *Buck* was whether a federal habeas petitioner was entitled to a CoA on an ineffective assistance claim arising from his state trial counsel's decision to present a defense expert who testified that Buck was *more* likely to be violent than other offenders because Buck was black.  *Buck* did not involve the central question presented by Wardrip's cryptic remand, *i.e.*, whether *Strickland* prejudice could be shown in the complete and total absence of any genuinely new or substantial *additional* mitigating evidence showing further details of the petitioner's relatively clean disciplinary record and good behavior during a prior incarceration. *Buck* most certainly did not establish a presumption of *Strickland* prejudice whenever trial counsel fails to develop and present unidentified mitigating evidence which is

- 9 -

cumulative of the mitigating evidence already before the capital sentencing jury. This is precisely the situation posed by Wardrip's remaining ineffective assistance claim. A failure to present mitigating evidence which is merely cumulative of mitigating evidence already in the record will not suffice to satisfy the prejudice prong of *Strickland*. *Brewer v. Lumpkin*, 66 F.4th 558, 566 (5th Cir.), *cert. denied*, __ U.S. __, 144 S. Ct. 354 (2023); *Howard v. Davis*, 959 F.3d 168, 173 (5th Cir. 2020), *cert. denied sub nom*. __ U.S. __, 141 S. Ct. 1085 (2021); *Norman v. Stephens*, 817 F.3d 226, 233 (5th Cir. 2016), *cert. denied sub nom*. 580 U.S. 1161 (2017).

In *Buck*, the Supreme Court held that a Texas criminal defendant was entitled to a CoA on an ineffective assistance claim. The Magistrate Judge recommended that Wardrip also receive a CoA on a very different type of ineffective assistance claim. Unlike the scenario in *Buck*, there is no allegation or evidence before this court establishing that Wardrip's trial counsel presented expert testimony at the punishment phase of Wardrip's capital murder trial directly contrary to Wardrip's interests.

The prejudice analysis undertaken by the Magistrate Judge, and adopted by this court above, recognizes the truly horrific nature of Wardrip's five serial murders. Wardrip's serial killings of young women were committed in five separate incidents over a period of many months and involved considerable planning and sophisticated execution, especially with regard to the disposition of most of his victims in isolated

- 10 -

locales.  Wardrip was able to carry out four of his murders without being linked to any of those killings until DNA evidence became available.  Despite his confession to Tina Kimbrew's murder, Wardrip was able to avoid detection and prosecution for Terry Sims's murder and his three other murders for more than a decade.  In contrast, Buck fatally shot two individuals and shot at more individuals in a single outburst of jealous anger.  He left several of the witnesses alive who later testified against him.  Buck's capital offense bore none of the carefully choreographed hallmarks of Wardrip's five distinct serial killings.

All of Wardrip's objections to the FCR lack any arguable merit and will be overruled.

The respondent's objections to the FCR take exception to the Magistrate Judge's findings and conclusions that the performance of Wardrip's trial counsel, whether viewed under AEDPA or a *de novo* standard, fell below an objective level of reasonableness.  The respondent argues that because there was no evidentiary development on this point at the state habeas level during Wardrip's initial state habeas proceeding (beyond the filing of attorney John F. Curry ("Curry")'s superficial and internally inconsistent affidavit), this court must assume the efficacy of the state habeas court's conclusion that attorney Curry made objectively reasonable decisions not to further investigate Wardrip's background (including Wardrip's time in prison prior to release on parole).  The respondent ignores the fact that the reason there was

- 11 -

no genuine evidentiary development during Wardrip's initial state habeas proceeding was that Wardrip's initial state habeas counsel failed to allege any specific facts, present the state court with any evidence (such as affidavits or records), or request any findings of fact or conclusions of law addressing *Strickland* prejudice.

For the reasons detailed by the Magistrate Judge in the FCR, as well as those pointed out by Judge Higginbotham during Wardrip's most recent appeal, attorney Curry was not just guilty of dropping the ball; he never picked it up in the first place. There is often a fine line between a rationale and a rationalization. When it comes to the purported reasons why attorney Curry and his investigators failed to make any inquiry whatsoever into Wardrip's time served in TDCJ (beyond reviewing disciplinary records *obtained by the State*), Curry's affidavit is far more of the latter than the former. Any question of whether Curry and the rest of Wardrip's defense team undertook an objectively reasonable investigation into Wardrip's background was resolved conclusively during the 2006 evidentiary hearing held in this cause. They most certainly did not.

While this court may not be able to consider the testimony presented during the 2006 hearing when reviewing the merits of Wardrip's ineffective assistance claim under AEDPA, this court is free to do so when alternatively analyzing Wardrip's ineffective assistance claim *de novo*. *Both* Curry's internally inconsistent state habeas affidavit and his testimony before the original Magistrate Judge in 2006 made clear

- 12 -

that Wardrip's defense team made no genuine investigation into Wardrip's prison years searching for potentially mitigating evidence – because Curry had made a decision not to argue that Wardrip was "a changed man."  As the Magistrate Judge explained in her findings and conclusions, this was not an objectively reasonable basis for failing to investigate the potential existence of mitigating evidence arising during Wardrip's previous incarceration.  Curry's purported choice was a rationalization, not a rationale.  Without knowing what mitigating evidence might exist, Curry chose not to undertake any significant investigation into Wardrip's excellent prison record or good behavior in prison.  For the reasons discussed at length in the FCR, the state habeas court's conclusion that Curry's decision to ignore Wardrip's prison record was objectively reasonable was itself objectively unreasonable.  All of the respondent's objections to the FCR lack arguable merit and will be overruled.

Accordingly, it is hereby **ORDERED** that (1) all of the petitioner's objections to the FCR (docket entries 252, 254) are **OVERRULED**; (2) all of the respondent's objections to the FCR (docket entry 253) are **OVERRULED**; (3) the FCR (docket entry 250) is **ADOPTED IN ITS ENTIRETY** and incorporated by reference herein; (4) all relief requested in Wardrip's second amended petition or reply brief (docket entries 239, 243) is **DENIED**; (5) Wardrip is **GRANTED** a CoA with regard to the following issues (a) whether his trial counsel rendered ineffective assistance by failing to adequately investigate Wardrip's background (especially during Wardrip's period

- 13 -

of incarceration prior to his arrest for Terry Sims's murder) and present available mitigating evidence and (b) whether Wardrip is entitled to equitable relief from the Supreme Court's holdings in *Shinn* and *Shoop* to permit federal evidentiary development based upon the deficient performance of Wardrip's initial state habeas counsel; and (6) all other pending motions (including docket entries 245, 249) are **DISMISSED AS MOOT**.

      **SO ORDERED**.

May 19, 2026.

_____
**A. JOE FISH**
**Senior United States District Judge**